IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 3:22-cv-1038 |
| | ) | |
| TO GO STORES, LLC, | ) | **COMPLAINT** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, the United States of America ("United States"), by authority of the Attorney General of the United States and on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), by and through their undersigned attorneys, with respect to claims under federal law, alleges as follows:

## NATURE OF ACTION

1.     This is a civil action brought in accordance with Section 9006 of the Solid Waste Disposal Act, as amended and often referred to by the name of its principal statutory amendment, the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* (hereinafter referred to as "RCRA") and the Puerto Rico Underground Storage Tank Regulations ("PRUSTR"), for injunctive relief and the assessment of civil penalties against Defendant To Go Stores, LLC ("To Go" or "To Go Stores").

## JURISDICTION

2.     This Court has jurisdiction over the subject matter of this action.  28 U.S.C. §§ 1331, 1345, & 1355; 42 U.S.C. § 6991e(a)(1).

3.      This Court has personal jurisdiction over Defendant because the Defendant is a limited liability company licensed to do business in the Commonwealth of Puerto Rico, with its principal place of business in Bayamon, Puerto Rico.

4.      Venue is proper in this judicial district under 28 U.S.C. Sections 1391(b)–(c) and 1395 because Defendant is located in this district and the events or omissions giving rise to this action occurred in this district.

## STATUTORY AND REGULATORY BACKGROUND

5.      RCRA established a comprehensive federal regulatory program for the management of hazardous wastes.  42 U.S.C. § 6901 *et seq.*

6.      On November 8, 1984, as part of the Hazardous and Solid Waste Amendments of 1984 to RCRA, Congress created Subtitle IX of RCRA, Regulation of Underground Storage Tanks, in response to a growing number of groundwater contamination incidents caused by substances leaking from underground storage tanks ("USTs").

7.      Section 9003(a) of RCRA, 42 U.S.C. § 6991b(a), directs the Administrator of the EPA to "promulgate release detection, prevention, and correction regulations applicable to all owners and operators of underground storage tanks, as may be necessary to protect human health and the environment."

8.      For the purposes of this Complaint, "owner" is defined in Section 9001(4) of RCRA, 42 U.S.C. § 6991(4), as "any person who owns an underground storage tank used for the storage, use, or dispensing of regulated substances . . . ."

9.       "Operator" is defined in Section 9001(3) of RCRA, 42 U.S.C. § 6991(3), as "any person in control of, or having responsibility for, the daily operation of the underground storage tank."

2

10.     The definition of "person" under RCRA includes, but is not limited to, an individual, a corporation, a partnership, or an association.  42 U.S.C. § 6903(15).

11.     "Underground storage tank" or "UST" is defined in Section 9001(10) of RCRA, 42 U.S.C. § 6991(10), in part, as "any one or combination of tanks (including underground pipes connected thereto) which is used to contain an accumulation of regulated substances . . . ."

12.     "Underground storage tank system" or "UST system" is defined in 40 C.F.R. § 280.12 as an underground storage tank, connected underground piping, underground ancillary equipment, and containment system, if any.

13.     Any tank system that is used to contain an accumulation of regulated substances and for which installation commenced after December 22, 1988 is a "new tank system."  40 C.F.R. § 280.12.

14.     "Regulated substance" is defined in Section 9001(7)(B) of RCRA, 42 U.S.C. § 6991(7)(B), as "petroleum."

15.     "Petroleum" is defined in Section 9001(6) of RCRA, 42 U.S.C. § 6991(6), as "including crude oil or any Fraction thereof which is liquid at standard conditions of temperature and pressure . . . ."

16.     Petroleum-based substances regulated under RCRA include gasoline and diesel fuels.  40 C.F.R. § 280.12.

17.     Section 9003(c)(1) of RCRA, 42 U.S.C. § 6991b(c)(1), requires EPA to promulgate regulations applicable to owners and operators of USTs, including "requirements for maintaining a leak detection system, an inventory control system together with tank testing, or a comparable system or method to identify releases in a manner consistent with the protection of human health and the environment."

3

18.     Section 9003(c)(2) of RCRA, 42 U.S.C. § 6991b(c)(2), requires EPA to promulgate regulations applicable to owners and operators of USTs, including "requirements for maintaining records of any monitoring or release detection system or inventory control system or tank testing or comparable system."

19.     Section 9003(c)(6), 42 U.S.C. § 6991b(c)(6), requires EPA to promulgate regulations applicable to owners and operators of USTS, including "requirements for maintaining evidence of financial responsibility for taking corrective action and compensating third parties for bodily injury and property damages caused by sudden and nonsudden accidental releases arising from operating an underground storage tank."

20.     Section 9005(a) of RCRA, 42 U.S.C. § 6991d(a), requires any owner or operator of an UST to furnish to EPA information relating to such tanks, associated equipment, and contents, as well as to conduct monitoring and testing.

21.     In accordance with Sections 9003(a) and 9003(c) of RCRA, 42 U.S.C. §§ 6991b(a) and 6991b(c), the Administrator of EPA promulgated regulations regarding the operation and maintenance of USTs, codified at 40 C.F.R. Parts 280 and 281, that apply to all owners and operators of USTs.

22.     A state may seek approval from EPA to administer and enforce its own UST regulations in lieu of federal regulations.  42 U.S.C. § 6991c.

23.     In accordance with Puerto Rico's Public Policy Environmental Act (Law No. 9 of June 18, 1970), the Commonwealth of Puerto Rico Environmental Quality Board promulgated the PRUSTR in 1990.  P.R. Admin. Regulation 4362.

24.     Following EPA approval of PRUSTR in 1998, the Puerto Rico Department of Natural and Environmental and Resources ("DNER"), formerly the Puerto Environmental

Quality Board, is the agency approved to administer and enforce PRUSTR within Puerto Rico in lieu of the federal RCRA Subchapter IX regulations.  40 C.F.R. § 282.102(a).

25.     Although the Commonwealth of Puerto Rico has primary responsibility to enforce PRUSTR, "EPA [retained] the authority to exercise its corrective action, inspection and enforcement authorities under sections 9003(h)(1), 9005 and 9006 of subtitle I of RCRA, 42 U.S.C. § 6991b(g)(1), 6991d and 6991e, as well as its authority under other statutory and regulatory provisions."  40 C.F.R. § 282.102(b).

26.     Section 9006(a)(2) of RCRA, 42 U.S.C. § 6991e(a)(2), requires EPA to notify the Commonwealth of Puerto Rico that it intends to exercise its enforcement authority.

27.     The terms "underground storage tank," "UST system," "regulated substance," "operator," and "person" are defined in PRUSTR Rule 105 in a manner consistent with the federal definitions provided in RCRA.

28.     Owners and operators must use spill prevention equipment that prevents the release of regulated substances to the environment when the transfer hose is detached from the fill pipe.  PRUSTR Rule 201(C)(1)(a).

29.     Owners and operators must use overfill prevention equipment that either (i) automatically shuts off the flow into the tank when the tank is ninety-five percent full; (ii) restricts the flow or triggers an alarm when the tank is ninety percent full; or (iii) restricts flow thirty minutes prior to overfilling, triggers an alarm one minute before overfilling, or automatically shuts off flow into the tank.  PRUSTR Rule 201(C)(1)(b).

30.     Owners and operators of steel UST systems must operate and continuously maintain corrosion protection to the metal components of the UST system that routinely contain regulated substances and are in contact with the ground. PRUSTR Rule 302(A).

31.     UST systems equipped with cathodic protection must be tested every three years after installation and an initial six-month test.  PRUSTR Rule 302(B)(1).

32.     Owners and operators must monitor USTs for releases every thirty days using certain methods listed in PRUSTR Rule 404(D) through (H).  PRUSTR 402(A).

33.     Owners and operators must maintain release detection records related to sampling, testing, or monitoring for at least one year.  PRUSTR Rule 406(B).

34.     If an owner or operator uses groundwater monitoring as a method for release detection, the groundwater must never be more than twenty feet from the ground surface.  PRUSTR Rule 404(F)(2).

35.     The site must be assessed to ensure that enough groundwater monitoring wells are properly positioned to detect releases and ensure compliance with the requirements of Rule 404(F)(1) through (5).  PRUSTR Rule 404(F)(7).

36.     Vapor monitoring and groundwater monitoring wells must be clearly marked and secured to avoid unauthorized access and tampering.  PRUSTR Rules 404(E)(7), (F)(8).

37.     Owners and operators must monitor underground piping that routinely conveys regulated substances under pressure by equipping the piping with an automatic line leak detector and conducting annual line tightness tests or performing monthly monitoring.  PRUSTR Rule 402(B)(1).

38.     Owners and operators must annually test automatic line leak detectors in accordance with the manufacturer's requirements.  PRUSTR Rule 405(A).

39.     If an owner or operator of an UST system discovers a release of regulated substances at the UST facility or in the surrounding area, or if monitoring results from a release

detection method indicate that a release may have occurred, the operator must report that a suspected release has occurred to DNER within twenty-four hours.  PRUSTR Rule 501(A), (C).

40.     Owners and operators must investigate and confirm all suspected releases of regulated substances within seven days according to the procedures listed in PRUSTR Rule 503(A) and (B) or according to another procedure approved by DNER.  PRUSTR Rule 503.

41.     Owners and operators of up to 100 petroleum USTs must demonstrate financial responsibility, in the amount of at least $1 million, for corrective action and compensation for bodily injury and property damage caused by accidental releases.  PRUSTR Rule 904(B)(1).

42.     Owners and operators must maintain evidence of all financial assurance mechanisms.  PRUSTR Rule 916(A).

43.     Section 9006 of RCRA, 42 U.S.C. § 6991e, authorizes the Administrator of EPA to commence a civil action for appropriate relief, including a temporary or permanent injunction, when the Administrator determines that any person is in violation of any requirement of Subchapter IX.

44.     Any owner or operator that fails to comply with any requirement or standard of a State-approved program under RCRA shall be subject to a civil penalty of up to $16,000 per tank for each day of violation occurring on or after January 13, 2009, through November 2, 2015, and $24,730 per tank for each day of violation occurring after November 2, 2015, and assessed on or after December 23, 2020.  42 U.S.C. § 6991e(d); 40 C.F.R. § 19.4; Civil Monetary Penalty Inflation Adjustment Rule, 83 Fed. Reg. 83,818, 83,821 (Dec. 23, 2020).

## DEFENDANT AND FACTUAL BACKGROUND

45.     Defendant To Go Stores is a Puerto Rican limited liability company with its principal place of business in Bayamon, Puerto Rico.

7

46.   To Go is duly registered with the Puerto Rico Department of State to do business in Puerto Rico.

47.   At all times relevant to this Complaint, To Go owned and/or operated USTs at at least fifteen gasoline fueling stations at the following locations in Puerto Rico:

   a.   Carr. 2, Km. 29.1, Vega Alta ("Vega Alta Facility");

   b.   Carr. 169, Km. 0.7, Guaynabo ("Guaynabo / Camarones Facility");

   c.   Carr. 169, Km. 4.9, Guaynabo ("Guaynabo / Los Frales Facility");

   d.   Ave. Magnolia, Esq. 115, Bayamon ("Bayamon / Magnolia Facility");

   e.   Carr. 2, Km 12.1, Bayamon ("Bayamon / Correa Facility");

   f.   Carr. 107, Km. 3.0, Aguadilla ("Aguadilla Facility");

   g.   Carr. 112, Km. 2.4, Isabela ("Isabela Facility");

   h.   Ave. Periferal, Esq. San Sebastian, Bayamon ("Bayamon / Rexville Facility");

   i.   Carr. 2, Km. 56, Barceloneta ("Barceloneta Facility");

   j.   Carr. 2, Km. 20.2, Toa Baja ("Toa Baja Facility");

   k.   Carr. 189, Km. 4.0, Gurabo ("Gurabo Facility");

   l.   Carr. 189, Calle Baldorioty, Caguas ("Caguas Facility");

   m.   Carr. 837, Km. 0.8, Guaynabo ("Guaynabo / Santa Rosa Facility");

   n.   Carr. Ramal 111, Lares ("Lares Facility"); and

   o.   Carr. 775, Km. 0.4, Comerio ("Comerio Facility").

48.   Between November 19, 2014, and December 8, 2014, EPA contractors inspected the fifteen gas stations operated by To Go Stores and listed in Paragraph 47.

49.   On April 14, 2015, EPA sent by certified mail an initial RCRA Section 9005 Information Request Letter ("IRL #1") to To Go to obtain further information about the

compliance status of the USTs that are the subject of this Complaint, as well as other USTs operated by To Go at other facilities.

50.   To Go received IRL #1 on April 20, 2015.

51.    On April 13, 2016, EPA sent by certified mail a second RCRA Section 9005 Information Request Letter ("IRL #2") to To Go to obtain additional information about the compliance status of the USTs that are the subject of this Complaint, as well as other USTs operated by To Go at other facilities.

52.   To Go received IRL # 2 on April 18, 2016.

53.   To Go responded to IRL #2 on May 18, 2016.

54.   On November 22, 2016, EPA sent by certified mail a third RCRA Section 9005 Information Request Letter ("IRL #3) to To Go to obtain additional information about the compliance status of the USTs that are the subject of this Complaint, as well as other USTs operated by To Go at other facilities.

55.   To Go received IRL #3 on November 28, 2016.

56.   To Go responded to IRL #3 on December 12, 2016.

57.   To Go is the operator of the UST systems at the Vega Alta, Guaynabo / Camarones, Bayamon / Magnolia, Bayamon / Correa, Isabela, Bayamon / Rexville, Barceloneta, Gurabo, Caguas, Lares, Guaynabo / Santa Rosa and Comerio Facilities.

58.   To Go Stores is the owner and operator of the UST systems at the Guaynabo / Los Frailes, Aguadilla, and Toa Baja Facilities.

59.   EPA notified DNER that EPA intends to exercise its enforcement authority under Section 9006(a)(2) of RCRA, 42 U.S.C. § 6991e(a)(2), on January 6, 2022.

## GENERAL ALLEGATIONS

60.     To Go is a "person" within the meaning of RCRA, 42 U.S.C. § 6903(15), and

PRUSTR Rule 105.

61.     At all times relevant to the violations alleged in this Complaint, To Go was

subject to the requirements of Subchapter IX of RCRA, 42 U.S.C. § 6991 *et seq.*, and its

implementing regulations in PRUSTR, including the applicable performance standards,

monitoring, testing, recordkeeping, reporting, and investigation requirements set forth therein,

promulgated to ensure that the USTs operated by To Go were properly maintained and

monitored to prevent releases of regulated substances into the environment.

62.     To Go is subject to injunctive relief and is liable for civil penalties based upon the

claims for relief identified below.  42 U.S.C. § 6991e(a), (d)(2).

## FIRST CLAIM FOR RELIEF
*Failure to Use Spill Prevention Equipment*
*PRUSTR Rule 201(C)(1)(a)*

63.     The United States re-alleges Paragraphs 1 through 62 above as if fully set forth

herein.

64.     Defendant must use spill prevention equipment that prevents releases of regulated

substances.  PRUSTR Rule 201(C)(1)(a).

65.     Based on inspections and EPA's review of documents submitted in response to

the Information Request Letters, Defendant was or has been in violation of PRUSTR Rule

201(C)(1)(a) at the Vega Alta, Aguadilla, Caguas, and Lares Facilities.

66.     Defendant is subject to injunctive relief and civil penalties of up to the amount

specified in Paragraph 44 for its violations of PRUSTR Rule 201(C)(1)(a).

## SECOND CLAIM FOR RELIEF
*Failure to Use Overfill Prevention Equipment*
*PRUSTR Rule 201(C)(1)(b)*

67.     The Unites States re-alleges Paragraphs 1 through 66 above as if fully set forth

herein.

68.     Defendant must use overfill prevention equipment.  PRUSTR Rule 201(C)(1)(b).

69.     Based on inspections and EPA's review of documents submitted in response to

the Information Request Letters, Defendant was in violation of PRUSTR Rule 201(C)(1)(b) at

the following Facilities:

        a.   Vega Alta;

        b.   Guaynabo / Camarones;

        c.   Guaynabo / Los Frailes;

        d.   Bayamon / Magnolia;

        e.   Aguadilla;

        f.   Isabela;

        g.   Barceloneta;

        h.   Toa Baja;

        i.   Guarabo;

        j.   Lares; and

        k.   Comerio.

70.     Defendant is subject to injunctive relief and civil penalties up to the amount

specified in Paragraph 44 for its violations of PRUSTR Rule 201(C)(1)(b).

### THIRD CLAIM FOR RELIEF
*Failure to Operate and Maintain Corrosion Protection*
*PRUSTR Rule 302(A)*

71.     The United States re-alleges Paragraphs 1 through 70 above as if fully set forth herein.

72.     Defendant must continuously operate and maintain corrosion protection for metal components of the USTs and piping that routinely contain regulated substances and are in contact with the ground.  PRUSTR Rule 302(A).

73.     Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 302(A) at the Guaynabo / Camarones and Barceloneta Facilities.

74.     Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 302(A).

### FOURTH CLAIM FOR RELIEF
*Failure to Inspect Cathodic Protection Systems*
*PRUSTR Rule 302(B)*

75.     The United States re-alleges Paragraphs 1 through 74 above as if fully set forth herein.

76.     Defendant must inspect the cathodic protection systems of UST systems within six months of installation and every three years thereafter.  PRUSTR Rule 302(B).

77.     Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 302(B) at the Guaynabo / Camarones and Guaynabo / Santa Rosa Facilities.

78.     Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 302(B).

## FIFTH CLAIM FOR RELIEF
*Failure to Provide Release Detection for USTs*
*PRUSTR Rule 402(A)*

79.     The United States re-alleges Paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendant must monitor the UST systems for release detection using one of the methods listed in PRUSTR Rule 404(D)–(H).  PRUSTR Rule 402(A).

81.     One acceptable method of release detection includes maintaining groundwater monitoring wells as described in PRUSTR Rule 404(F).

82.     If groundwater monitoring wells are used for release detection, the groundwater must never be more than twenty feet from the ground surface.  PRUSTR Rule 404(F)(2).

83.     A dry groundwater monitoring well is an invalid method of release detection because the absence of water in such a well makes it impossible to detect potential releases of product.

84.     If groundwater monitoring wells are used for release detection, and product is found in a monitoring well, that method is an invalid method of release detection until the product is removed from the monitoring well and the well is decontaminated.

85.     Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant has been in violation of PRUSTR Rule 402(A) at the following Facilities:

    a.   Vega Alta;

    b.   Guaynabo / Camarones;

    c.   Bayamon / Magnolia;

    d.   Isabela;

    e.   Barceloneta;

    f.   Caguas;

    g.   Guaynabo / Santa Rosa; and

    h.   Comerio.

86.    Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 402(A).

### SIXTH CLAIM FOR RELIEF
*Failure to Provide Release Detection for Pressurized Piping*
*PRUSTR Rule 402(B)(1)(b)*

87.    The United States re-alleges Paragraphs 1 through 86 above as if fully set forth herein.

88.    Defendant must provide release detection for the piping in the UST systems and retain records related to the testing of release detection equipment for at least one year. PRUSTR Rules 402(B), 406(B).

89.    One approved method of release detection for UST system piping includes annual line tightness testing.  PRUSTR Rule 402(B)(1)(b).

90.    Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 402(B)(1)(b), or in the alternative, PRUSTR Rule 406(B) at the following Facilities:

    a.   Vega Alta;

    b.   Bayamon / Magnolia;

    c.   Isabela;

    d.   Barceloneta;

    e.   Gurabo;

f.   Caguas;

g.   Guaynabo / Santa Rosa;

h.   Lares;

i.   Guaynabo / Los Frailes; and

j.   Toa Baja.

91.     Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 402(B)(1)(b) and/or Rule 406(B).

**SEVENTH CLAIM FOR RELIEF**
*Failure to Secure Monitoring Wells*
*PRUSTR Rule 404(E)(7) and 404(F)(8)*

92.     The United States re-alleges Paragraphs 1 through 91 above as if fully set forth herein.

93.     Defendant must monitor its UST systems for release detection using one of the methods listed in PRUSTR Rule 404(D)–(H).  PRUSTR Rule 402(A).

94.     As the owner and operator of the USTs at the Aguadilla Facility, Defendant is required to monitor its UST systems for release detection using one of the methods listed in PRUSTR Rule 404(D)–(H).  PRUSTR Rule 402(A).

95.     If vapor monitoring wells or groundwater monitoring wells are used for release detection, the monitoring wells must be clearly marked and secured to avoid unauthorized access and tampering.  PRUSTR Rules 404(E)(7), 404(F)(8).

96.     Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 404(E)(7), or in the alternative, PRUSTR Rule 404(F)(8) at the following Facilities:

a.   Vega Alta;

b.  Guaynabo / Camarones;

c.  Bayamon / Magnolia;

d.  Bayamon / Correa;

e.  Aguadilla;

f.  Bayamon / Rexville;

g.  Barceloneta

h.  Gurabo;

i.  Caguas;

j.  Guaynabo / Santa Rosa;

k.  Lares; and

l.  Comerio.

97.    Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 404(E)(7) and Rule 404(F)(8).

### EIGHTH CLAIM FOR RELIEF
*Failure to Test Automatic Line Leak Detectors*
*PRUSTR Rule 405(A)*

98.    The United States re-alleges Paragraphs 1 through 97 above as if fully set forth herein.

99.    Defendant must provide release detection for the piping in the UST systems and retain records related to the testing of release detection equipment for at least one year. PRUSTR Rule 402(B); PRUSTR Rule 406(B)

100.    Owners and operators must annually test automatic line leak detectors used for pressurized piping.  PRUSTR Rule 405(A).

101.    Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 405(A),or in the alternative, PRUSTR Rule 406(B) at the following Facilities:

    a.   Vega Alta;

    b.   Bayamon / Magnolia;

    c.   Barceloneta;

    d.   Toa Baja;

    e.   Gurabo;

    f.   Caguas;

    g.   Guaynabo / Santa Rosa;

    h.   Lares; and

    i.   Toa Baja.

102.    Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 405(A) and/or Rule 406(B).

## NINTH CLAIM FOR RELIEF
*Failure to Equip Pressurized Lines with Line Leak Detectors*
*PRUSTR Rule 402(B)(1)(a)*

103.    The United States re-alleges Paragraphs 1 through 102 above as if fully set forth herein.

104.    Defendant must equip pressurized piping that conveys regulated substances under pressure with automatic line leak detectors.  PRUSTR Rule 402(B)(1)(a).

105.    Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant has been in violation of PRUSTR Rule 405(A) with

respect to one Regular line at the Guaynabo / Los Frailes Facility from August 7, 2014, until July 9, 2015.

106.    Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 402(B)(1)(a).

**TENTH CLAIM FOR RELIEF**
*Failure to Report Suspected Release*
*PRUSTR Rule 501*

107.    The United States re-alleges Paragraphs 1 through 106 above as if fully set forth herein.

108.    Defendant must report any suspected release of regulated substances to DNER within twenty-four hours.  PRUSTR Rule 501.

109.    A release of regulated substances should be suspected and must be reported when: (a) regulated substances are observed at the UST site, including free product or vapors in soil; (b) unusual operating conditions of UST equipment occur, unless the equipment is defective, not leaking, and is immediately repaired or replaced; or (c) monitoring results from a release detection method required under Rule 402 and Rule 403 suggest that a release has occurred. PRUSTR Rule 501.

110.    Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 501 at the following Facilities:

      a.   Bayamon / Rexville;

      b.   Gurabo;

      c.   Comerio; and

      d.   Toa Baja.

111.    Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 501.

## ELEVENTH CLAIM FOR RELIEF
*Failure to Investigate Suspected Release*
*PRUSTR Rule 503*

112.    The United States re-alleges Paragraphs 1 through 111 above as if fully set forth herein.

113.    Defendant must investigate all suspected releases requiring reporting to DNER under Rule 501 within seven days.  PRUSTR Rule 503.

114.    Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant has been in violation of PRUSTR Rule 501 at the following Facilities:

        a.   Bayamon / Rexville;

        b.   Gurabo;

        c.   Comerio; and

        d.   Toa Baja.

115.    Defendant is subject to injunctive relief and civil penalties up to the amount specified in Paragraph 44 for its violations of PRUSTR Rule 503.

## TWELFTH CLAIM FOR RELIEF
*Failure to Obtain Financial Assurance*
*PRUSTR Rule 904*

116.    The United States re-alleges Paragraphs 1 through 115 above as if fully set forth herein.

117.    As the operator of the Vega Alta Facility and at least 68 USTs in Puerto Rico, Defendant must demonstrate financial responsibility, in the amount of at least $1 million, for

taking corrective action and compensating third parties for bodily injury and property damage caused by accidental releases from petroleum USTs.  PRUSTR Rule 904(B)(1).

118.    As the operator of the Vega Alta Facility, Defendant must maintain evidence of all financial assurance mechanisms used to demonstrate financial responsibility.  PRUSTR Rule 916(A).

119.    Based on inspections and EPA's review of documents submitted in response to the Information Request Letters, Defendant was in violation of PRUSTR Rule 904(A), or in the alternative, PRUSTR Rule 916(A) at the Vega Alta Facility from November 19, 2013, until at least November 25, 2014.

120.    Defendant is subject to civil penalties up to the amount specified in Paragraph 44 for its violation of PRUSTR Rule 904.

## RELIEF REQUESTED

Wherefore, Plaintiff, the United States, respectfully requests that the Court grant the following relief:

a) Enjoin Defendant to comply with all applicable requirements for Subtitle IX of RCRA, 42 U.S.C. § 6991 *et seq.*, and its implementing regulations;

b) Assess a civil penalty of up to $16,000 per tank for each day of violation occurring on or after January 13, 2009, through November 2, 2015, and $24,730 per tank for each day of violation occurring after November 2, 2015;

c) Award the United States its costs and disbursements in this action; and

d) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division


/s/  Natalie G. Harrison
NATALIE G. HARRISON
USDC-PR No. G03504
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Ben Franklin Station P.O. Box 7611
Washington D.C. 20044-7611
(202) 305-0461
Natalie.g.harrison@usdoj.gov

Of counsel:

Carl Howard, Esq.
U.S. Environmental Protection Agency Region II
290 Broadway
New York, NY 10007
(212) 637-3216